CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 8 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBERT ALLEN BANE,** | ) | Civil Action No.: 7:12-cv-159 |
| | ) | |
| **Plaintiff,** | ) | <u>**Memorandum Opinion**</u> |
| **v.** | ) | |
| | ) | **Hon. James C. Turk** |
| **VIRGINIA DEPARTMENT OF** | ) | **Senior United States District Judge** |
| **CORRECTIONS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Medical Defendants'[1] Motion to Dismiss—or, in the alternative, Motion for Summary Judgment—ECF No. 19, and Security Defendants'[2] Motion for Summary Judgment. ECF No. 26. Plaintiff, a handicapped prisoner in the Virginia state prison system, brings a variety of claims alleging violations of the First Amendment, the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA").

## I.     FACTS

Robert Allen Bane ("Plaintiff" or "Bane"), a veteran with service-related injuries, was first committed to VDOC custody in 1987. He suffers from a variety of ailments—including nerve damage, foot drop,[3] and osteoarthritis—and requires rigid leg braces, a Canadian crutch, and special shoes to walk steadily. He is unable to climb stairs.

---

[1] The Medical Defendants are Dr. Cacioppo, Nurse S. Yates, and Nurse A. Mitchell. The Medical Defendants and Security Defendants are separately represented.

[2] The Security Defendants are the Virginia Department of Corrections, Pocahontas State Correctional Center, S.K. Young, T. Batton, R. Walz, and E. Nester.

[3] "Foot drop describes the inability to raise the front part of the foot due to weakness or paralysis of the muscles that lift the foot. As a result, individuals with foot drop scuff their toes along the ground or bend their knees to lift their foot higher than usual to avoid the scuffing, which causes what is called a 'steppage' gait." <u>Foot Drop Information Page</u>, National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/foot_drop/foot_drop.htm (last visited Dec. 10, 2012).

1

Plaintiff brings many claims, but most of Plaintiff's claims stem—directly or indirectly—from his complaints about the handicapped shower in the A-1 pod of the Pocahontas State Correctional Center ("PSCC"). This shower is the only shower regularly available to Plaintiff and other disabled inmates. This shower, however, is apparently a popular place for the able-bodied prisoners to wash out their food trays—despite staff warnings not to do so—leading to slippery conditions for the handicapped inmates. Bane was vocal in complaining about the slippery conditions, which apparently led an able-bodied prisoner to assault him on October 25, 2011. To protect Bane from the assaulting prisoner while they investigated the attack, PSCC staff transferred Bane to Administrative Segregation.

In light of the increased security in Administrative Segregation ("Ad Seg"), staff confiscated his Canadian crutch and the leg sleeves he wore underneath the rigid leg braces. The leg sleeves, nothing more than socks with the toes cut off, protected his skin from the intense rubbing caused by the leg braces. Staff also denied Bane use of a wheelchair while his sleeves and crutch were confiscated. Because these items were confiscated, Bane allegedly had great difficulty maneuvering around the cell and could not perform the therapeutic walking exercises that eased the pain in his legs and prevented deterioration of his condition. ECF No. 1, Compl. at 7. Due to the lack of leg sleeves, his right leg brace rubbed a large sore on his leg, requiring treatment with "antibiotic," presumably an ointment cream. Id. Plaintiff also alleges he was refused access to a shower during the ten days he was in Ad Seg.

Another effect of the increased security in Ad Seg is that whenever a prisoner is allowed to leave the cell—for example, for showers or recreation—he must kneel, with hands behind his back, facing away from the cell door so that prison staff can place him in restraints. Staff forced Plaintiff's compliance with this requirement, despite Plaintiff's protests that he had been

2

exempted from kneeling by the VDOC Health Services Director. The kneeling allegedly caused Plaintiff great pain; in addition to the nerve damage in his legs, he suffers from osteoarthritis in the hips and knees. See ECF No. 19-2, Yates Aff. ¶ 9. On October 27, 2011, two days after his entrance into Ad Seg, Defendant Dr. Cacioppo examined Plaintiff for a possible waiver from the kneeling requirement and determined that a waiver was not necessary. As to Nurses Yates and Mitchell, Plaintiff alleges that they did not provide him with a wheelchair after his leg sleeves and crutch were confiscated, nor did they seek the return of his sleeves and crutch.

After ten days, on or about November 5, 2011, Bane was released from Ad Seg and returned to the general population.

Bane filed numerous grievances about the handicapped shower in the A-1 pod and his treatment in Ad Seg, but when no relief was granted as a result, Bane filed suit in district court. The matter is presently before the Court on the Medical Defendants' Motion to Dismiss—or, in the alternative, Motion for Summary Judgment—ECF No. 19, and Security Defendants' Motion for Summary Judgment. ECF No. 26. Bane has responded—voluminously—to both motions and the matter is now ripe for disposition.

## II.    LEGAL STANDARDS

To properly state a claim upon which relief can be granted, Plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "It requires the Plaintiff to articulate facts, when accepted as true, that 'show' that the Plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Ashcroft, 556 U.S. at 678).

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine

3

issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Summary judgment should be entered if the Court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

In considering a motion for summary judgment, a court must consider the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also MLC Auto., LLC, v. Town of S. Pines, 532 F.3d 269, 273 (4th Cir. 2008). A summary judgment motion should not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and established affirmatively that the adverse party cannot prevail under any circumstance." Campbell v. Hewitt, Coleman, & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994). The moving party bears the burden to establish either the absence of a genuine issue of material fact or the absence of evidence to support the non-moving party's case. MLC Auto., 532 F.3d at 281.

## III.    CLAIMS

By the Court's count, Bane is currently pursuing the following seventeen claims.

| Claim Number | Description of Claim | Defendants | Law Allegedly Violated |
|---|---|---|---|
| 1 | Failure to Provide Level "F" Disability Accommodations, ECF No. 1, Compl. at 6. | All except Nester; VDOC & PSCC as to ADA claim only | Eighth Am.; ADA |
| 2 | Confiscation of Leg Sleeves and Crutch While in Ad Seg. ECF No. 1, Compl. at 7. | All except Nester; VDOC & PSCC as to ADA/RA claim only | Eighth Am.; ADA/RA |
| 3 | Denial of Wheelchair While in Ad Seg. ECF No. 1, Compl. at 7. | Nurses Yates & Mitchell; VDOC & PSCC as to ADA/RA claim only | Eighth Am.; ADA/RA |

4

| | | | |
|---|---|---|---|
| 4 | Refusal to Ask Physician for Wheelchair Order While in Ad Seg. ECF No. 1, Compl. at 8. | Nurses Yates & Mitchell; VDOC & PSCC as to ADA/RA claim only | Eighth Am.; ADA |
| 5 | Denial of Access to the Structured Living Unit. ECF No. 1, Compl. at 8. | VDOC & PSCC | ADA/RA |
| 6 | Forcing Bane to Kneel While in Ad Seg. ECF No. 1, Compl. at 9. | All except Nester; VDOC & PSCC as to ADA claim only | Eighth Am.; ADA/RA |
| 7 | Untrained Staff Carrying Bane. ECF No. 1, Compl. at 9. | VDOC & PSCC | ADA/RA |
| 8 | Deliberate Delay in Responding to Requests for Accommodations While in Ad Seg. ECF No. 1, Compl. at 10-11. | VDOC & PSCC | ADA/RA |
| 9 | Refusal of Requests to Sell Tide Laundry Soap in Commissary. ECF No. 1, Compl. at 11. | VDOC, & PSCC | ADA/RA |
| 10 | Refusal to Document All Disabilities on Major Problems Sheet. ECF No. 1, Compl. at 12. | VDOC & PSCC | ADA/RA |
| 11 | Refusal to Provide a Wheelchair-Accessible Vehicle. ECF No. 1, Compl. at 13. | VDOC & PSCC | ADA/RA |
| 12 | Failure to Provide a Safe Shower Area in the A-1 Pod. ECF No. 1, Compl. at 14. | Young, Batton, & Walz | Eighth Am.; ADA/RA |
| 13 | Legal Mail Being Opened. ECF No. 1, Compl. at 15-16. | Young, Batton, Walz, & Nester | First Am. & Sixth Am. |
| 14 | Failure to Allow Online Ordering of Clothing. ECF No. 1, Compl. at 17. | VDOC & PSCC | ADA/RA |
| 15 | Bane Not Being Allowed to Participate in Work Study Program. ECF No. 1, Compl. at 18. | VDOC & PSCC | ADA/RA |
| 16 | Wrongful Withholding of Bane's Veteran Benefits. ECF No. 1, Compl. at 17. | VDOC | 38 U.S.C. § 5301 |
| 17 | Retaliation Claim For Bane's Previous Litigation. ECF No. 1, Compl. at 18. | All | ADA/RA |

Of these claims, only Claim 2 seeks monetary damages: "$1,000 per day for the 14 days of suffering," a total of $14,000, for the "painful and bloody sore the leg brace rubbed on [Bane's] leg when he was denied the use of his protective sleeve." ECF No. 29, Pl.'s Resp.

5

Opp'n Mot. Dismiss at 7; see also ECF No. 1, Compl. at 20. All the other claims seek only injunctive relief, that

> defendants [] fully comply with all disability accommodation orders—no kneeling; no carrying; obtain a suitable vehicle with wheelchair lift; and stop improperly opening, reading or otherwise mishandling correspondence from lawyers, or courts or even government lawyers; VDOC must take whatever steps it deems necessary or appropriate to ensure disability accommodation orders are consistently followed by all VDOC employees.

ECF No. 1, Compl. at 20.

## IV.    STANDING TO SEEK INJUNCTIVE RELIEF

Because Bane seeks primarily injunctive relief, the Court first considers whether he has standing to seek that relief. Bane seeks prospective injunctive relief for all but one of his claims in a clear attempt to come under the protective umbrella of Ex Parte Young, 209 U.S. 123, 155-56 (1908). See ECF No. 29, Pl.'s Resp. Opp'n Mot. Dismiss at 7-9. Ex Parte Young carved out a narrow exception to the rule that states are generally immune from suit, holding that state sovereign immunity does not bar a cause of action seeking only prospective injunctive relief. 209 U.S. at 155-56.[4] Thus, sovereign immunity does not bar Bane's claims for injunctive relief. See id. That, however, leads to another problem: whether Bane has standing to pursue injunctive relief for distinct past harms. The parties have not briefed the issue, but federal courts are obligated to *sua sponte* examine standing, even if the parties have not raised it. Benham v. City of Charlotte, N.C., 635 F.3d 129, 134 (4th Cir. 2011).

The Supreme Court discussed the issue of standing to seek injunctive relief for past harms in City of Los Angeles v. Lyons, 461 U.S. 95 (1983), where a man claimed that Los Angeles police had placed him in a chokehold and he sought injunctive relief against future

---

[4] The rationale of Ex Parte Young is that sovereign immunity is intended to protect the states' funds from expenditure. If, however, the plaintiff only seeks injunctive relief, the rationale for immunity is not implicated.

6

chokeholds. The Supreme Court held that the man lacked standing to pursue injunctive relief "absent a real and immediate threat of again being choked." Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991) (describing Lyons). In the words of the Fourth Circuit,

> The Lyons rule is a variation on an old theme—Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. Doctrines like standing, mootness, and ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice. The courts should be especially mindful of this limited role when they are asked to award prospective equitable relief instead of damages for a concrete past harm, and a plaintiff's past injury does not necessarily confer standing upon him to enjoin the possibility of future injuries.

Cheney, 924 F.2d at 529 (emphasis added). However, "a plaintiff need not prove that she is guaranteed to suffer a future injury in order to have standing. Rather, 'a sufficient likelihood' of encountering some future harm is generally sufficient to permit a plaintiff to seek injunctive relief." Equal Rights Ctr. v. Abercrombie & Fitch Co., 767 F. Supp. 2d 510, 516 (D. Md. 2010), on reconsideration in part (Jan. 31, 2011) (quoting Lyons, 461 U.S. at 111).

The same rule obtains in ADA cases. See Gregory v. Otac, Inc., 247 F. Supp. 2d 764, 770 (D. Md. 2003) ("In ADA cases, courts have held that a plaintiff does not have standing to obtain injunctive relief if he cannot demonstrate a likelihood that he will suffer future discrimination at the hands of the defendant."); Aikins v. St. Helena Hosp., 843 F. Supp. 1329, 1333 (N.D. Cal. 1994) ("[A] plaintiff seeking injunctive relief premised upon an alleged past wrong must demonstrate a 'real and immediate threat' of repeated future harm to satisfy the injury in fact prong of the standing test.") (quoting Lyons, 461 U.S. at 105). Many other cases could be cited, but they all stand for the same proposition: that there must be "'sufficient immediacy and reality' to [plaintiff's] allegations of future injury to warrant invocation of the jurisdiction of the District Court." O'Shea v. Littleton, 414 U.S. 488, 497 (1974).

7

Based on the foregoing principles, some of Plaintiff's claims must be dismissed First, it appears that at least Dr. Cacioppo and Nurse Mitchell no longer work for VDOC. See ECF No. 19-4, Cacioppo Aff. ¶ 2 ("From 4/2011 until 6/2012, I worked on a contract basis providing care to inmates of [VDOC] at [PSCC]."); ECF No. 19-3, Mitchell Aff. ¶ 2 ("From September 2010 until May, 2012, I was employed at [PSCC]."). As such, Bane cannot show that he is likely to suffer future discrimination at the hands of these two defendants, and thus lacks standing to seek injunctive relief against Dr. Cacioppo or Nurse Mitchell.

Second, many of Bane's claims survive because they concern conditions in Ad Seg—where he was assigned after he was assaulted by another inmate—and it is sufficiently likely that Bane will be reassigned to Ad Seg in the future. Unlike in O'Shea, Bane in many ways does not control his assignment to Ad Seg. Indeed, Bane was in Ad Seg only because an able-bodied prisoner assaulted him and not through any fault of his own. He need exercise no volition to be placed in Ad Seg again. Lyons, 461 U.S. at 105-06 (finding significant that the plaintiff would need to violate the law again to be subject to the complained-of treatment). Therefore, the Court finds that it is sufficiently likely that he will be assigned to Ad Seg in the future and that claims connected with Bane's time in Ad Seg are sufficiently likely to reoccur. Thus, the Plaintiff has standing to pursue injunctive relief on Claims 1 through 7. Claims 9 through 15 and Claim 17 similarly allege ongoing violations of Bane's rights; Bane also has standing to pursue these claims.

To the contrary, in Claim 8, Bane faults Nurses Yates and Mitchell for deliberate delay in responding to his requests for accommodations while he was in Ad Seg. This claim is unlike the others connected to his time in segregation because the others were a natural consequence of Bane being housed there. For example, if Bane was again assaulted and assigned temporarily to

8

segregation, his crutch and leg sleeves would likely again be confiscated, unless there has been a change in VDOC or PSCC policy. On Bane's claim of deliberate delay in responding to his requests, however, the nurses' actions were not pursuant to a policy such that they are reasonably likely to reoccur. Bane's allegation that the nurses will deliberately delay in granting his accommodation requests in the future is thus speculative and fails to meet the O'Shea test to confer standing. As such, Claim 8 is dismissed.

Likewise, in Claim 16, Bane faults VDOC for withholding a portion of his veterans' disability benefits in compliance with a Virginia statute passed in 2011, Va. Code Ann. § 53.1-43.1, which instructed prison officials to set aside 10% of the funds received by an inmate into a trust account to be paid to the inmate upon parole or discharge from prison. While the exact timeline is unclear, Bane submitted a grievance, see ECF No. 29-2 at 67, Va. Dep't of Corr., Informal Compl., Jan. 18, 2012, and James Carmody, a lawyer, wrote to Senator Jim Webb on Bane's behalf, pointing out that 38 U.S.C. § 5301 flatly prohibits any kind of seizure of veterans' benefits by anyone other than the United States. See ECF No. 29-2, Letter from James Carmody to Sen. Jim Webb, at 70-71. Within a matter of days, VDOC and PSCC officials ceased the withholding and returned the withheld funds to Bane's account. See ECF No. 29-2 at 67, Va. Dep't of Corr., Informal Compl., Jan. 18, 2012. Bane seeks injunctive relief to prohibit VDOC and PSCC officials from withholding veterans' benefits in the future, but the relative speed with which prison officials complied with Bane's request as well as the clear language of 38 U.S.C. § 5301 suggests to the Court that the likelihood of a future violation does not rise above a speculative level. To the extent Bane alleges that this withholding was pursuant to a retaliatory motive for his past litigation, see ECF No. 29 at 11, the Court also finds that speculative since

9

VDOC merely acted according to the dictates of the General Assembly in establishing inmate trust accounts. As such, Claim 16 is dismissed.

## V. EXHAUSTION UNDER THE PRISON LITIGATION REFORM ACT

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Nussle v. Porter, 534 U.S. 516, 524 (2002) (discussing the exhaustion requirements of 42 U.S.C. § 1997e(a)). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," or whether the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the state provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006).

The Security Defendants seek summary judgment on the ground that Bane failed to properly exhaust Claims 1, 5, 7, 11, and 16. To support this claim, they detail the VDOC grievance procedure guidelines, then summarily assert that these claims were not properly exhausted. See ECF No. 27-1, Turner Aff. ¶ 10 ("Bane has not exhausted his administrative remedies with regards to claims a, c, e, g, and k."). This conclusory and unfounded assertion is insufficient to "show[]—that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This alone is sufficient to deny summary judgment to the Security Defendants on the grounds of exhaustion.

10

Furthermore, contrary to Defendants' assertion, Plaintiff has provided evidence that these claims were exhausted. For Claim 1, <u>see</u> ECF No. 41-1 at 31-32. For Claim 5, <u>see id.</u> at 20-25. For Claim 7, <u>see id.</u> at 13-14, 31-34. For Claim 11, <u>see id.</u> at 8-9, 29-30. For Claim 16, <u>see id.</u> at 27-28.

The Court **DENIES** the Motion for Summary Judgment on the grounds of exhaustion.

## VI.    MERITS OF REMAINING CLAIMS

### A. Eighth Amendment Claims

To state a cause of action under §1983, a plaintiff must allege that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). To properly allege a § 1983 claim against a state official under the Eighth Amendment, a plaintiff must demonstrate that (1) the alleged conduct is "objectively, sufficiently serious"; and (2) that the prison official was "deliberately indifferent to the plaintiff's rights, health or safety" and had a "sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

> A prison official shows deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety.

<u>Odom v. S.C. Dep't of Corr.</u>, 349 F.3d 765, 770 (4th Cir. 2003) (internal citations omitted).

Medical treatment claims under § 1983 fall within the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's

11

serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "[A] serious ... medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). Where the plaintiff alleges an unconstitutional delay of medical care, the delay must result in "substantial harm," see Shabazz v. Prison Health Serv., Inc., 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. Feb. 9, 2012) (citing Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)), which "may be satisfied by lifelong handicap, permanent loss, or considerable pain." Id. (quoting Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)) (internal citations and punctuation omitted). See also Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) (citing cases regarding delay of medical care).

### 1.  Claim 1: Failure to Provide Level "F" Disability Accommodation

The Security Defendants claim that this claim was not exhausted and therefore did not address the merits. The Medical Defendants argue—in support of their Motion to Dismiss, or in the alternative, Motion for Summary Judgment—that the Level "F" Disability Accommodation is nothing more than a facility code for VDOC use; since PSCC is rated as a Level "F" facility, Bane is properly accommodated. A Level "F" facility is "any facility without hills, or housing/critical areas without steps or barriers." ECF No. 35-1 at 6, Va. Dep't of Corr., Div. Operating Procedure 824, Attach. No. 1. Bane, in response, relies on the inference that "barriers" refers to actions similar to climbing steps and overcoming physical barriers—actions such as kneeling and squatting. See ECF No. 29, Pl.'s Resp. Opp'n Mot. Dismiss at 12. Bane alleges that PSCC, as currently administered, is not a Level "F" facility because Bane is being forced to kneel and squat, PSCC uses vehicles for transportation that are not equipped with wheelchair

12

lifts and thus are roughly equivalent to the stairs forbidden for a Level "F" facility, and he is being denied access to the Structured Living Unit ("SLU") because of his disability because the SLU is not handicap accessible. Id. Of note, these arguments are also independent claims. See Claims 6, 11, and 5, respectively.[5] Because Claim 1 is nothing more than an amalgamation of three separate claims, the Court dismisses it as duplicative.

### 2. Claim 2: Confiscation of Leg Sleeves and Crutch While in Segregation

Bane alleges that prison officials violated the Eighth Amendment when they confiscated his crutch and leg sleeves while he was in segregation. Because his leg sleeves were confiscated, a bloody sore developed on his leg. Because his crutch was confiscated, he was unable to access the showers or outside recreation and he could not perform the doctor-prescribed therapeutic walking to ease the pain in his legs and prevent the "deterioration of [his] condition," ECF No. 1, Compl. at 7, presumably referring to the nerve damage in his legs. Unique to this claim is Bane's request for monetary damages for the confiscation of the leg sleeves; he is seeking $14,000— $1,000 for every day that he had a bloody sore on his right leg from the rubbing produced by his leg brace.

Bane's claim for the confiscation of the leg sleeves and the resulting bloody sore fails as to the first element of an Eighth Amendment claim, a sufficiently serious injury. See Shabazz v. Prison Health Serv., Inc., No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. Feb. 9, 2012) (citing cases). The sore was easily treated with antibiotic ointment and did not result in

---

[5] Indeed, while the denial of access to the SLU and the lack of wheelchair lifts on the transport vans may be viable claims under the ADA, they fail to state a claim or a basis for a claim under the Eighth Amendment. Moreover, in the three separate claims that form the basis of Claim 1, Bane invokes the Eighth Amendment only in Claim 6, regarding the forced kneeling. As to the SLU (Claim 5) and the wheelchair lifts (Claim 11), Bane claims only a violation of the ADA.

13

permanent injury. Thus, the Court grants the Defendants' Motion for Summary Judgment on this claim.

As to the denial of his crutch—assuming that the possibility of nerve deterioration is a sufficiently serious injury—Bane's claim fails because he cannot plausibly plead deliberate indifference. Bane must plead that prison officials were aware of and disregarded the risk of serious harm. That cannot be established as against the Security Defendants because they are entitled to rely on the medical opinions of the Medical Defendants. See Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990) (non-medical officials not deliberately indifferent for failing to respond to inmate's complaints when prisoner is ostensibly under care of medical experts). This is true even if the injuries that Bane sustained were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See Iko, 535 F.3d at 241. While the crutch was initially confiscated because it posed security risks, Young's affidavit makes clear that if the doctor had deemed it medically necessary for Bane to keep his crutch in Ad Seg, Bane would have been allowed to retain it. See ECF No. 27-4, Young Aff. ¶ 2.

Bane cannot plausibly plead deliberate indifference as to the Medical Defendants because he has not alleged—and the documentary evidence fails to reveal—that Bane apprised any of the Defendants that being unable to walk with his crutch for a mere ten days would result in nerve damage. See ECF No. 19-3, Mitchell Aff. Ex. A. In grievances filed while in Ad Seg, Bane repeatedly sought a waiver from the kneeling requirement and requested that his shoes be returned so that his leg braces fit properly, but he did not mention even once the need to walk to avoid nerve damage. See ECF No. 19-3, Mitchell Aff. at 7-12. Prison officials cannot be deliberately indifferent to that which they are not aware.

14

Thus, the Court grants the Defendants' Motions for Summary Judgment as to Claim 2 under the Eighth Amendment.

### 3. Claims 3 and 4: Denial of Wheelchair While in Ad Seg

In Claim 3, Bane alleges that Nurses Yates and Mitchell violated his Eighth Amendment rights when they denied him the use of a wheelchair while he was in Ad Seg. Bane, however, has not alleged any injury that resulted from the lack of access to a wheelchair for the ten days he spent in Ad Seg and therefore cannot meet the first element of an Eighth Amendment claim. See Lowery v. Bennett, No. 11-6425, 2012 WL 3218006, at *5 (4th Cir. Aug. 9, 2012) (In an Eighth Amendment medical care claim, "[a]s with any other Eighth Amendment violation, the defendant must demonstrate that the official acted with a sufficiently culpable state of mind and that the injury inflicted is sufficiently serious.") (unpublished opinion) (citing Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008)). Thus, the Court grants the Medical Defendants' Motion to Dismiss as to Claim 3.

For the same reasons, Claim 4, alleging that Nurses Yates and Mitchell refused to ask a physician for a wheelchair order while Bane was in Ad Seg, is also dismissed pursuant to the Motion to Dismiss. Like Claim 3, Bane has not alleged any injury.

### 4. Claim 6: Forced Kneeling While in Ad Seg

Bane alleges that prison officials violated the Eighth Amendment when they forced him to kneel while he was in Ad Seg. Kneeling—so that officials can safely restrain the inmate before the inmate is moved from the cell—is required to access the showers and outside recreation. ECF No. 27-4, Young Aff. ¶ 5. All inmates must kneel unless they have a specific waiver from the institutional physician. Id.

15

Assuming that the pain Bane allegedly suffered while kneeling meets the requisite level for Eighth Amendment purposes, Bane cannot allege deliberate indifference against either the Security or Medical Defendants. Bane did not name any of the segregation staff as defendants, choosing instead to sue the supervisors of the prison staff at PSCC. See ECF No. 29-1, Pl.'s Reply Aff. at 36 ("I did not name any of the segregation staff as defendants in this action . . . ."). Therefore, he must prove deliberate indifference of the Security Defendants under a theory of supervisory liability.

The Fourth Circuit has outlined three ways in which deliberate indifference can be shown under a theory of supervisory liability: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted). Bane has not alleged any aspect of the supervising officials' conduct that evidenced deliberate indifference under any of the three theories. Bane does not dispute that he had access to and received medical care while in Ad Seg, nor is there an allegation that the Security Defendants interfered with the medical staff's performance or were indifferent to the medical staff's constitutional violations. There is no allegation that the Security Defendants even knew that Bane was in Ad Seg, knew that he had been deprived of his crutch and leg sleeves, knew that he had difficulty walking without his crutch, knew that Dr. Cacioppo had denied him the use of a wheelchair, or knew that Bane was forced to kneel before leaving his cell and that such kneeling would cause him considerable pain. There is simply no basis from which to infer deliberate indifference on the part of the Security Defendants.

16

As for the Medical Defendants, the Court has already discussed the fact that Dr. Cacioppo and Nurse Mitchell no longer work for VDOC and therefore no injunctive relief—which is what Bane is seeking against all Defendants on this claim—can be had against these two Defendants. That leaves Nurse Yates. There is no allegation in the record from which the Court can draw the inference that Nurse Yates was deliberately indifferent. Nurse Yates is not listed in this claim in the Complaint. See ECF No. 1, Compl. at 9. Nurse Yates is listed as the Head Nurse at PSCC in the complaint, id. at 3, which tends to indicate that she lacks personal involvement with Bane. That is certainly buttressed by her affidavit, which contains only information about Bane's medical records and his Level F facility designation. Because the Complaint fails to plead deliberate indifference as to Nurse Yates, Bane's claim against her must fail.

Bane has not stated a claim against any defendant. Therefore, as to Bane's Claim 6 Eighth Amendment claim, the Court grants the Medical Defendants' Motion to Dismiss and the Security Defendants' Motion for Summary Judgment, which the Court converts to a Motion to Dismiss because the grounds upon which summary judgment was sought were based entirely on the complaint.[6]

---

[6] The Court dismisses claims against the Medical Defendants pursuant to their Motion to Dismiss. The Security Defendants did not file a Motion to Dismiss, only a Motion for Summary Judgment. "To the extent that a defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6). As a result, '[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment.'" Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 211 (N.D.N.Y. 2008) (quoting Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 273-74 (2d Cir. 1968). Where the defendants' motion for summary judgment is not based entirely on the plaintiff's complaint, because Bane is a prisoner, the Court is under an obligation under 28 U.S.C. § 1915A to *sua sponte* dismiss a claim at any time if it fails to state a claim.

17

### 5. Claim 12: Failure to Provide a Safe Shower Area in the A-1 Pod

In Claim 12, Bane alleges that Security Defendants Young, Batton, and Walz violated the Eighth Amendment by failing to provide a safe shower area for him as a disabled inmate.[7] Bane alleges that the able-bodied prisoners use the handicap-accessible shower to clean out their food trays, resulting in slippery conditions. ECF No. 1, Compl. at 14-15. In fact, Bane slipped on the shower floor on February 13, 2012 and broke his right leg brace, although he avoided further injury. Id. at 15.

Bane's allegations state a claim under the Eighth Amendment. First, the slippery conditions for a handicapped inmate such as Bane present a substantial risk of serious harm. See Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998). Not only could Bane slip and be seriously injured, he has in fact fallen on the slippery surface, although he was fortunate enough to avoid injury. Bane has also sufficiently alleged deliberate indifference because he alleged that he has submitted numerous grievances and even after his fall, prison officials still have not remedied the issue. Id. These allegations are sufficient to state a claim. It may be that prison officials have responded reasonably to this risk, but since the Security Defendants argued that this claim was not exhausted, they have not addressed the merits.

To summarize the resolution of Bane's Eighth Amendment claims, all fail to state a claim except Bane's claim of unsafe shower conditions, Claim 12. Additionally, Bane brought claims against the Medical Defendants only under § 1983 and not under the ADA. See ECF No. 1,

---

[7] Bane alleged in the Complaint that prison officials violated the Eighth Amendment by failing to protect him from retaliation from able-bodied inmates, see ECF No. 1, Compl. at 14-15, but he later acknowledged that "staff did in fact promptly and appropriately address the intimidation and assault by moving the other inmates to different housing units." ECF No. 29, Resp. Opp'n Mot. Dismiss at 18. Officials are not liable under the Eighth Amendment if they respond reasonably to the risk. See Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003) ("In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.") (internal citations omitted). The Court therefore concludes that officials are not liable for the retaliation since Bane has acknowledged that they responded reasonably to the risk of harm.

18

Compl. at 3, ECF No. 29-1, Pl.'s Reply Aff. ¶ 24. As all of the Eighth Amendment claims against the Medical Defendants have been dismissed, the Medical Defendants are terminated from this case.

### B. ADA Claims[8]

Title II of the Americans with Disabilities Act ("ADA") applies to inmates in state prisons. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209 (1998). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

While the ADA protects state inmates while incarcerated, their available remedies are limited. The Fourth Circuit has held that the ADA does not recognize a cause of action against employees in their individual capacities. Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999); see also 42 U.S.C. § 12132 (providing a remedy only against a "public entity"); McNulty v. Bd. of Educ. of Calvert Cnty., No. CIV.A. DKC 2003-2520, 2004 WL 1554401, at *6 (D. Md. July 8, 2004) ("As with Title II of the ADA, Section 504 of the Rehabilitation Act 'does not permit actions against persons in their individual capacities.'") (quoting Baird, 192 F.3d at 472). Therefore, all of Bane's ADA claims against defendants in their individual capacities must be dismissed and all claims that name individual defendants will be construed as against them in their official capacities. Moreover, to the extent Bane seeks relief in Claim 17 under the ADA antiretaliation provision, the same result obtains. Baird, 192 F.3d at 471-72. Despite the lack of individual liability, the doctrine of *respondeat superior* applies in the ADA context, so the actions of the individual defendants can serve as the basis for finding VDOC or PSCC in

---

[8] Due to the similarity of ADA and RA claims, the Court will simply use "ADA" to refer to both types of claims.

violation of the statute.[9] See Rosen v. Montgomery Cnty., 121 F.3d 154, 157 (4th Cir. 1997) (citing EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1279 (7th Cir. 1995)).

The elements of an ADA and Rehabilitation Act ("RA") claim are largely identical: "In general, a plaintiff seeking recovery for violation of either statute must allege that (1) []he has a disability, (2) []he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) []he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his] disability." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005).[10] Because these elements are similar, the Court will refer only to the ADA. See Baird, 192 F.3d at 468. It is undisputed, at least for purposes of this motion, that Plaintiff meets the first element.[11] Bane also alleges facts sufficient to support a prima facie case that he is a "qualified

---

[9] In one of Bane's previous cases filed in this Court, the Court listed the factors for determining the applicability of *respondeat superior*. See Bane v. Va. Dept. of Corr., 267 F. Supp. 2d 514, 521 n.4 (W.D. Va. 2003).

> The Restatement of Agency Second interprets the doctrine of *respondeat superior* to hold masters liable for the tortious acts of a servant when:
> > (1) Conduct of a servant is within the scope of employment, if, but only if:
> > > (a) it is of the kind he is employed to perform;
> > > (b) it occurs substantially within the authorized time and space limits;
> > > (c) it is actuated, at least in part, by a purpose to serve the master, and
> > > (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> > (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Id. (citing Restatement (Second) of Agency § 228 (2002). The Court expresses no opinion whether the Security or Medical Defendants' actions are attributable to VDOC or PSCC, but it appears that at least some of the Medical Defendants may be contractors, and not employees, of VDOC.

[10] While the ADA and RA "generally are construed to impose the same requirements due to the similarity of the language," Baird ex rel. Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999), there is at least one significant difference. Section 504 of the RA requires that the exclusion be "solely by reason" of disability and § 12132 of the ADA merely requires that the exclusion be "by reason" of disability. Id. at 469. The Fourth Circuit has determined that, in this respect, the ADA standard is slightly easier for plaintiffs to satisfy.

[11] While Defendants suggest that Bane has not provided any information as to the specifics of his disability, ECF No. 27, Memo. Sup. Mot. S. J. at 14 n.3, it appears that VDOC regards Bane as having a disability and that the issues listed on Bane's Major Problems Sheet would provide a sufficient basis to conclude that Bane has a disability for purposes of the ADA. Since the Defendants raise this issue only in a footnote and do not contest in their brief that Bane has a disability, the Court determines, for the present motions, that Bane has an ADA-qualified disability.

individual"[12] and therefore states a claim as to the second element. See Baird, 192 F.3d at 498-99.

What constitutes an exclusion or denial of benefits under the third element requires a fact-intensive and case-specific inquiry. Some guidance can be gleaned from the Department of Justice's regulations promulgated under the ADA,[13] as well as from the prior decisions of other courts.

Under federal regulations, a public entity may not, on the basis of disability, deny a qualified individual the opportunity to participate in or benefit from an aid, benefit, or service. 28 C.F.R. § 35.130(b)(1)(i). It may not afford an opportunity "that is not equal to that afforded to others." Id. § 35.130(b)(1)(ii). Nor may it provide an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result. Id. § 35.130(b)(1)(iii). Additionally, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." Id. § 35.130(b)(7); see also id. § 35.150(a)(3); Tennessee v. Lane, 541 U.S. 509, 532 (2004) ("And in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service."). The regulations also specifically address correctional facilities. 28 C.F.R. § 35.152. Unless an exception is appropriate, such facilities "shall not place inmates or detainees with

---

[12] A qualified individual is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131.

[13] See 28 C.F.R. §§ 35.101 et seq.; 42 U.S.C. § 12134 (directing the Attorney General to promulgate regulations implementing 42 U.S.C. Ch. 126, Subch. II, Part A); see also 45 C.F.R. §§ 84.1 et seq. (regulations pursuant to the Rehabilitation Act).

disabilities in facilities that do not offer the same programs as the facilities where they would otherwise be housed." Id. § 35.152(b)(2)(iii). Such facilities shall also "implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 Standards, so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." Id. § 35.152(b)(3).

The case law addressing ADA claims by prisoners is scattered and often fact-specific. In Allah v. Goord, for example, the plaintiff alleged he was subjected to unsafe conditions while being transported on a wheelchair-accessible van to go to outside medical appointments. 405 F. Supp. 2d 265, 270-71 (S.D.N.Y. 2005). The district court classified the service being denied as outside medical care, rather than merely transportation. Id. at 280. The court denied the defendants' motion to dismiss plaintiff's ADA claim because "[a]lthough plaintiff is not wholly precluded from participating in this service, if he is at risk of incurring serious injuries each time he attempts to take advantage of outside medical attention, surely he is being denied the benefits of this service." Id.

In Bryant v. Madigan, the Seventh Circuit noted that

> the Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [the plaintiff] was not treated worse because he was disabled. His complaint is that he was not given special accommodation. Unlike the prisoner plaintiffs in Love v. McBride, 896 F. Supp. 808 (N.D. Ind. 1995), or Donnell v. Illinois State Bd. of Educ., 829 F. Supp. 1016, 1020 (N.D. Ill. 1993), he is not complaining of being excluded from some prison service, program, or activity, for example an exercise program that his paraplegia would prevent him from taking part in without some modification of the program. He is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice.

84 F.3d 246, 249 (7th Cir. 1996); see also Egan v. Va. Dep't of Corr., No. 7:06CV00338, 2006 WL 2222674, at *2 (W.D. Va. Aug. 2, 2006).

22

A district court in <u>Carrasquillo v. City of New York</u> noted that a plaintiff must allege that he "was <u>prevented</u> from participating in or benefiting from prison programs and services because of his disability." 324 F. Supp. 2d 428, 443 (S.D.N.Y. 2004). The court dismissed the plaintiff's claim that his placement in housing far from services such as the law library and infirmary violated the ADA because it caused him great pain to walk such distances. <u>Id.</u> (noting that the plaintiff only alleged difficulty, not impossibility, in accessing particular services).

In <u>Saunders v. Horn</u>, the district court concluded that the plaintiff sufficiently alleged exclusion from a service, program, or activity, where he alleged that the bathroom and shower facilities of the defendant prison were inadequate. 959 F. Supp. 689, 697 (E.D. Pa. 1996). The court noted that "one can infer that the plaintiff suffered pain when using the facilities at [the prison] because of his disability. Therefore, the plaintiff has sufficiently pled the third element of his ADA claim." <u>Id.</u> at 697-98.

The Court below analyzes Bane's ADA claims to determine if they state a claim. Despite the guidance of the statutes, regulations, and existing case law, the Court desires further briefing from the parties before the Court addresses the ADA claims on summary judgment grounds. Accordingly, the Court will ask VDOC counsel and Mr. Bane to further address the claims that plausibly state a claim to relief. Those that do not state a claim will be dismissed.

### 1. Claim 1: Failure to Provide Level "F" Disability Accommodations

As the Court previously noted while discussing Claim 1 in the context of the Eighth Amendment, in this claim Bane alleges that the "F" classification given him—which protects him from having to engage hills, stairs, and "barriers"—is currently being violated due to the forced kneeling that would be required should he be reassigned to Ad Seg, the lack of wheelchair accessible vehicles to transport him, and the denial of access to the Structured Living Unit. These

grounds are also separately asserted as Claims 6, 11, and 5, respectively, which are addressed below. Because Claim 1 is nothing more than an amalgamation of three separate claims, the Court dismisses it as duplicative.

### 2. Claim 2: Confiscation of Leg Sleeves and Crutch While in Ad Seg

As to the confiscation of Bane's leg sleeves, his claim fails on the third element. In other words, he was not excluded from participation in or denied the benefits of any activity, or otherwise discriminated against on the basis of his disability when the Security Defendants confiscated his leg sleeves. Bane does not identify anything from which he was excluded. The only injury he can point to as a result of the denial of the leg sleeves is the bloody sore that developed on his leg. The claim is akin to a medical treatment claim as opposed to a denial of benefits. There is no liability under the ADA for a prison's medical treatment of its disabled prisoners. See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996); see also Egan v. Va. Dept. of Corr., No. 7:06CV00338, 2006 WL 2222674, at *2 (W.D. Va. Aug. 2, 2006). Thus, Bane's claim under the ADA for denial of leg sleeves will be dismissed under § 1915A(b)(1).

Bane's claim for denial of his crutch, however, does state a claim. Bane has alleged that without a crutch, he cannot walk. See ECF No. 1, Compl. at 9 ("my inability to walk without my crutch . . . ."). The confiscation of Bane's crutch, in conjunction with the denial of his wheelchair request and the kneeling requirement, meant that Bane could not access showers or outside recreation during his stay in Ad Seg. If Bane did not have a disability, these services would be available to him. Bane alleges that his disability was a "motivating factor" in his inability to access these services. Thus, the court finds that Bane has alleged a violation of the ADA in regards to the confiscation of his crutch. Additionally, Bane alleges that the security reasons cited for the confiscation of his crutch are merely pretextual since "One Leg" and "Little

24

Robbie" were allowed to keep their "accommodations" in Ad Seg. See ECF No. 29-1, Pl.'s Reply Aff. at 54.

### 3. Claim 3: Denial of Wheelchair While in Ad Seg

As in his claim for denial of his crutch, in Claim 3 Bane alleges that he could not access the showers or outside recreation without a wheelchair as an alternative for a crutch. Therefore, the Court finds that he states a claim. However, to the extent Bane alleges that the denial of a wheelchair violated the ADA because it exacerbated the sore on his leg, that portion of the claim fails under § 1915A(b)(1) because there is no ADA liability for mere medical treatment of a disabled prisoner. See Bryant, 84 F.3d at 249.

### 4. Claim 4: Refusal to Ask Physician for Wheelchair Order While in Ad Seg

The Court finds that Claim 4 fails because it alleges a violation connected to Bane's medical treatment, for which there is no ADA liability. Id. Nurse Mitchell's affidavit states that whatever wheelchair request Bane made was in connection with the sore on his leg, not in connection with the shower or outside recreation. ECF No. 19-3, Mitchell Aff. ¶ 23. Therefore, the Court dismisses this claim under § 1915A(b)(1).

### 5. Claim 5: Denial of Access to the Structured Living Unit

Bane has alleged that Warden Young has instituted a "Structured Living Unit" program at PSCC that presumably offers greater privileges than those afforded to other inmates. Bane has plainly alleged that he is otherwise qualified for the program, but cannot enter the program because it is conducted in an area of the prison that is not accessible to disabled inmates due to the lack of handicap cells and showers. This states a claim under the ADA.

25

### 6. Claim 6: Forcing Bane to Kneel While in Ad Seg

Like Bane's claim seeking access to his crutch and a wheelchair, Bane also alleges that the kneeling requirement effectively prohibited him accessing the showers or outside recreation. This claim states a plausible claim for relief. Bane also alleges that he has been issued a kneeling waiver in regards to cleaning his cell, see ECF No. 29-1, Pl.'s Reply Aff.¶ 25, and as he seeks only injunctive relief, the purpose of this claim is to extend that same kneeling waiver in the event he should find himself again in Ad Seg and wants to shower or use outside recreation.

### 7. Claim 7: Untrained Staff Carrying Bane

Bane alleges two separate occasions in which he was or is carried: onto and off of transport vans because no wheelchair accessible vehicles are available at PSCC, and the forced carrying that occurred while he was in Ad Seg. As to the former, this claim is identical to Claim 11 and the Court dismisses this aspect of Claim 7 as duplicative of Claim 11. As to the latter, he does not allege that he was denied access to any service or activity because of the carrying while in Ad Seg; this portion of the claim must also be dismissed under § 1915A(b)(1).

### 8. Claim 9: Refusal of Requests to Sell Tide Laundry Soap in Commissary

In Claim 9, Bane alleges that the PSCC policy forbidding inmates access to laundry soap disproportionately affects him because of his disability.[14] Specifically, he claims that because of his disability, his protective aids and underclothes become foul smelling more quickly than able-bodied prisoners' clothes do. This is because Bane's protective aids—arm slings, leg braces, etc.—become quickly soiled by sweat and his underclothes become stained because he suffers from incontinence, a result of nerve damage.

---

[14] Bane's allegation is not that Warden Young or other VDOC officials intentionally discriminate against the disabled in excluding laundry detergent from sale in the commissary.

26

Bane has alleged that he has no access to laundry soap, in the commissary or by mail order, and that the hand soap Warden Young has told him is "good enough" is simply not good enough, leading to prisoners and guards alike ridiculing Bane because his cell and person smell like sweat and feces. ECF No. 29, Pl.'s Resp. Opp'n Mot. Dismiss at 24-28.

Defendants offer evidence that same day laundry service is provided once per week for each inmate and that water draining from handwashed items in an inmate's cell poses a security risk. Defendants assert that these facts entitle them to summary judgment. ECF No. 27-4, Young Aff. ¶ 6. In response, Bane has offered persuasive evidence that hand washing of personal items is in fact authorized by VDOC policy, see ECF No. 35-1 at 8, Va. Dep't of Corr., Operating Procedure 802.1 (authorizing the hand washing of personal items), and has alleged that not only does each cell have unobtrusive hooks for drying hand washed items, but also that he has been able to obtain laundry soap to wash his clothing at "most" VDOC facilities where he has been imprisoned. See ECF No. 1, Compl. at 11-2; ECF No. 29, Pl.'s Resp. Opp'n Mot. Dismiss at 24-28.

On this record, the court concludes that Bane has stated a claim that under the ADA. Specifically, he has alleged that he is being denied an "equal opportunity" to a service that PSCC offers—in this case effective laundry service—because of his disability. See 28 C.F.R. § 35.130(b)(1)(iii).

### 9. Claim 10: Refusal to Document All Disabilities on Major Problems Sheet

Like other previous claims, Bane has not alleged that he has been denied participation in any program or service because of the failure to document his disabilities on the Major Problems Sheet. Thus, the Court also dismisses this claim under § 1915A(b)(1) because medical treatment claims are not viable under the ADA. See Bryant, 84 F.3d at 249.

27

### 10. Claim 11: Refusal to Provide a Wheelchair-Accessible Vehicle

Claim 11, in which Bane faults Defendants for failing to provide a wheelchair-accessible vehicle, states a claim. In an analogous case, a New York federal district court found that unsafe conditions while transporting disabled prisoners stated a claim under the ADA. See Allah, 405 F. Supp. 2d at 270-71. The Court similarly finds that whether the service is outside medical care or a transfer to a different facility, Bane has met the minimal requirements for stating an ADA claim here.

### 11. Claim 12: Failure to Provide a Safe Shower Area in the A-1 Pod

Bane states a claim that he is denied safe shower facilities because of his disability. He alleges that, as a disabled inmate, he has only one regularly accessible shower. This shower, however, is consistently slippery from food waste even after the many complaints Bane has lodged. If Bane were able-bodied, he could presumably choose from other showers that are less slippery, and he would likely be at less risk to slip on a slippery floor, but because he is disabled, he is allegedly forced to use a single shower that is encumbered with a high risk of being injured. The defendants did not address this allegation as a claim and may do so in their second motion for summary judgment.

### 12. Claim 14: Failure to Allow Online Ordering of Clothing

Claim 14 fails to state a claim because Bane can point to no program, service, or benefit that he is currently being denied. His basic allegation is that the VDOC policy limiting his non-commissary purchases to mail order purchases only deprives him of the ability to purchase jeans that cover his leg braces. His leg braces necessitate jeans that are wider below the knee to accommodate the extra bulk that his leg braces create; this fit of jeans is referred to as "boot cut." ECF No. 29, Pl.'s Resp. Opp'n Mot. Dismiss at 33. Bane has ordered jeans from J.C. Penney for

years, but J.C. Penney recently discontinued their mail order business, focusing instead on its internet sales. Id. While Bane eventually found another brand of jeans that fit over his leg braces, he argues that the nine months of effort required to do so, compared with the single form the able-bodied inmates need to fill out to order jeans from the commissary, violates the ADA's "equal enjoyment" provisions. Id. at 33-36.

While the Court recognizes Bane's concern that retailers' shift to online methods of business may eventually make the jeans he needs inaccessible to him, he himself admitted that he was able to find the necessary jeans under the current mail order system. Id. As such, he has not been excluded from a program on the basis of his disability. If the Dickie's brand jeans become unavailable in the future and Bane is unable to find another retailer with jeans that would fit over his braces, then Bane's ADA claim might be viable. Until then, the Court dismisses this claim under § 1915A(b)(1).

### 13. Claim 15: Bane Not Being Allowed to Participate in Work Study Program

Bane has alleged that despite being otherwise qualified to participate in the work study program, he is being denied that opportunity because medical staff has given him a medical classification that effectively forbids him from working. Bane alleges that he has worked in other facilities and that with or without reasonable accommodations he could work. ECF No. 29, Pl.'s Resp. Opp'n to Def.'s Mot. Dismiss at 36-40. His allegations state a claim under the ADA. The Security Defendants argue in response that they are not responsible for Bane's inability to participate in the Work Study Program because his medical classification prohibits it. The problem with this argument, however, is that it fails to recognize that the true defendant under this claim is VDOC, not the security officials at PSCC. Thus, if Bane is being denied an opportunity to participate in the Work Study Program on the basis of his disability in spite of

being otherwise qualified, it ultimately is not important which of VDOC's employees is responsible for the deprivation of Bane's rights under the ADA because VDOC is liable no matter who violated his rights.

### 14. Claim 17: Retaliation Claim For Bane's Previous Litigation

"To establish a prima facie retaliation claim under the ADA, plaintiffs must allege (1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011) cert. denied, 132 S. Ct. 1960 (2012) (internal citations omitted).

Bane alleges that his protected conduct was the litigation he has filed and that the adverse actions are all the wrongs he has alleged in this case. For evidence of the causal link between the conduct and the adverse action, Bane seems to rely primarily on a statement by Warden Young in 2002 when he was Bane's warden at Wallens Ridge State Prison. Young allegedly said then, "Mr. Bane, you know all this litigation will come back to bite you in the long run, don't you?" ECF No. 1, Compl. at 18. As to Warden Young, the Court finds that Bane has pleaded the minimal requirements for an ADA retaliation claim. Bane seems to allege that he is suing all Defendants for retaliation, but he has not pleaded facts sufficient to support a retaliation claim against any Defendant other than Warden Young and—via *respondeat superior*—VDOC. To the extent Bane alleges other Defendants violated the ADA's anti-retaliation provisions, claims against these other Defendants are dismissed.

### C. Abrogation of Sovereign Immunity Under the United States v. Georgia Test

Because Claim 2—specifically, the denial of Bane's leg sleeves while in Ad Seg—does not state a claim under the ADA, and this aspect of the claim was the only ground on which Bane

30

sought monetary damages, the Court need not address whether Title II of the ADA validly abrogates state sovereign immunity. <u>See</u> <u>United States v. Georgia</u>, 546 U.S. 151 (2006). The remainder of Bane's claims seek only prospective injunctive relief, which remedy state sovereign immunity does not bar. <u>Ex Parte Young</u>, 209 U.S. 123, 155-56 (1908).

### D. Claim 13, Interference with Bane's Legal Mail

Bane also alleges that Security Defendants Young, Batton, and Walz directed the mailroom supervisor, E. Nester, and other staff to open, read, and censor "'clearly marked' legal letters from government attorneys, private attorneys, and the U.S. Court of Appeals for Veteran Claims." ECF No. 1, Compl. at 15-16. Among the mail he alleges Defendants improperly opened were letters from the General Counsel for the Department of Veterans Affairs concerning claims pending before the Court of Appeals for Veterans Claims. Specifically, Bane points to at least fifteen letters from the Court of Appeals for Veterans Claims that were improperly handled when Defendants allegedly opened, read (outside of Bane's presence), and then delivered them to him by the regular mail process. <u>See</u> ECF No. 29, Pl.'s Resp. Opp'n to Def.'s Mot. Dismiss at 28. Bane also alleges that he never received some letters from the Court of Appeals for Veterans Claims, and that on one occasion a letter was opened and sent to two incorrect cells before reaching him—at which point several pages of the enclosed court documents were missing. <u>Id.</u> at 29. He also alleges that eleven letters from private attorneys that were clearly marked as being from attorneys were opened outside of his presence.

The Court will forego the parties' additional arguments in the briefing, focusing instead on whether Bane's allegations in the Complaint state a claim. Concluding that they do not, the Court grants the Defendants' Motion for Summary Judgment.

While Bane refers to a violation of his First Amendment right to petition the government for redress of grievances, ECF No. 1, Compl. at 15-16, Bane's factual allegations sound more in the nature of claims for (1) access to the courts under the First Amendment, see Stanley v. Vining, 602 F.3d 767, 770 (6th Cir. 2010) ("There must be some allegation that the prison official's conduct amounted to denial of access to the courts or some form of censorship of speech."), and (2) the right to counsel under the Sixth Amendment. See id. ("In order to state a § 1983 cognizable claim for deprivation of right to counsel, there must be some allegation indicating an interference with the prisoner's relationship with counsel. In order to state such a claim there must be something more than an allegation that a guard 'read' his 'legal mail' in his presence and that he was offended or believed this act to be a violation of a state prison regulation.") (citing Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974)).

Bane's mere assertion that Defendants' improper handling of his legal mail severely hindered litigation before the Court of Appeals for Veteran's Claims, see ECF No. 29, Pl.'s Resp. Opp. Mot. Dismiss at 29-30, is not sufficient to state an access to courts claim. Bane's allegations do not demonstrate any specific manner in which the mail issues adversely affected his litigation efforts. Lewis v. Casey, 518 U.S. 343, 351, 353 (1996) (finding that to state denial of access to courts claim, inmate must demonstrate that challenged policy "hindered his efforts to pursue a legal claim," meaning that a nonfrivolous legal claim ha[s] been frustrated or [ ] impeded").

The same result obtains on Bane's right to counsel claim. While Bane has "the right to seek and obtain the assistance of competent counsel so that the assertion of legal claims may be fully effective," McDonough v. Dir. of Patuxent, 429 F.2d 1189, 1192 (4th Cir. 1970) (citing Coleman v. Peyton, 340 F.2d 603 (4th Cir. 1965)), he has not alleged that opening mail from

these prospective attorneys "interfere[ed] with [Bane's] relationship with counsel." See Stanley, 602 F.3d at 770. Bane's allegations surely indicate annoyance and perhaps inconvenience at the attorneys' promotional materials being opened outside his presence, but annoyance and inconvenience are insufficient to state a right to counsel claim under the Sixth Amendment. Id. The Court grants the Defendants' Motion for Summary Judgment on Claim 13, the legal mail claim.

## VII.  CONCLUSION

The Court GRANTS the Medical Defendants' Motion to Dismiss (ECF No. 19) GRANTS IN PART and DENIES IN PART the Security Defendants' Motion for Summary Judgment (ECF No. 26), and DISMISSES some of Bane's claims under 28 U.S.C. § 1915A(b). Specifically:

- Eighth Amendment Claims
  - The Court dismisses, grants the motion to dismiss, or grants the motion for summary judgment on Claims 1, 2, 3, 4, and 6 insofar as they assert Eighth Amendment claims.
  - Claim 12 on the basis of the Eighth Amendment states a claim.
- ADA/RA Claims
  - The Court dismisses, grants the motion to dismiss, or grants the motion for summary judgment on Claims 1, 2 (as to the confiscation of the leg sleeves), 4, 7, 8, 10, 14, 16, and 17 (as to all Defendants except Warden Young in his official capacity and, by extension, VDOC).
  - Bane's ADA/RA Claims 2 (as to the confiscation of the crutch), 3, 5, 6, 9, 11, 12, 15, and 17 (as to Warden Young in his official capacity and, by extension, VDOC) state a valid claim.

33

- Legal Mail Claim

    o The Court grants the motion for summary judgment as to Claim 13.

Additionally, Bane brought claims against the Medical Defendants only under § 1983 and not under the ADA. See ECF No. 1, Compl. at 3, ECF No. 29-1, Pl.'s Reply Aff. ¶ 24. As all of the Eighth Amendment claims against the Medical Defendants have been dismissed, the Medical Defendants are terminated from this case. Nester, the mailroom supervisor, is also terminated from the case because the Court granted summary judgment on Claim 13, the only claim that named him as a defendant.

The Court requests that counsel for VDOC and the Security Defendants address the surviving claims in a Motion for Summary Judgment due 30 days from the entry of this order. As to the ADA claims, Counsel should address whether Bane can survive summary judgment as to each of the elements of an ADA on each claim; whether Bane has standing to seek prospective injunctive relief for the distinct past violations he claims; whether the actions of the Medical and Security Defendants can be imputed to VDOC and/or PSCC under *respondeat superior*; whether complying with Bane's claims for injunctive relief would cause VDOC to "fundamentally alter the nature of the service, program or activity," see 28 C.F.R. § 35.130(b)(7); whether complying with Bane's claims would impose an "undue burden" on VDOC, see Tennessee v. Lane, 541 U.S. 509, 532 (2004), and other issues raised by the Court under each claim.

After defense counsel submits its Motion for Summary Judgment, Bane will have 21 days in which to file his response. Defense counsel will then have 14 days to file a response, should any be desired.

34

ENTER: This 28th day of December, 2012.


Hon. James C. Turk
Senior United States District Judge

35