CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 15 2013

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ROBERT ALLEN BANE,** | ) | **Civil Action No.: 7:12-cv-159** |
| **Plaintiff,** | ) | |
| **v.** | ) | **Memorandum Opinion** |
| **VIRGINIA DEPARTMENT OF CORRECTIONS, et al.,** | ) | **Hon. James C. Turk** **Senior United States District Judge** |
| **Defendants.** | ) | |

This matter is before the Court on Plaintiff Robert Bane's ("Bane") "Motion to Reconsider," ECF No. 47, which seeks reconsideration of the Court's Memorandum Opinion and Order dated December 28, 2012. ECF Nos. 42 & 43. For the reasons stated below, the Motion is **DENIED**.

## I. LEGAL STANDARDS

Since Bane filed his motion within the twenty-eight days provided by Rule 59(e), the Court construes Bane's "Motion to Reconsider" as a Rule 59(e) motion to alter or amend the judgment. See Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 247 n.4 (4th Cir. 2012) (treating motions to reconsider filed within twenty-eight days as Rule 59(e) motions and motions filed outside twenty-eight days as Rule 60(b) motions) (citing Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 n. 4 (4th Cir. 2011). As explained by the Fourth Circuit,

> A Rule 59(e) motion may only be granted in three situations: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007) (citations omitted). It is an extraordinary remedy that should be applied sparingly. EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997).

Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012).

The Court is also fully aware of its obligation to liberally construe the pleadings and allegations of a *pro se* plaintiff, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), however, "the special judicial solicitude with which a district court should view . . . *pro se* [filings] does not transform the court into an advocate." United States v. Wilson, 699 F.3d 789, 797 (4th Cir. 2012) (internal citation and punctuation omitted).

## II. ANALYSIS

The Court will not recite the facts and will assume familiarity with the Memorandum Opinion and Order dated December 28, 2012. ECF Nos. 42 & 43. In his motion, Bane makes several arguments as to why certain claims dismissed by that Order should be "reinstated."

First, Bane argues that Claim 8—which concerns the medical staff's alleged deliberate delay in responding to his requests for accommodations while in Ad Seg—should not have been dismissed for lack of standing to seek injunctive relief because he "has made no claim for injunctive relief." ECF No. 47, Mot. Reconsider at 3. Bane seems to argue that he seeks monetary relief in Claim 8, but that assertion is belied by the Complaint and the various representations to the Court about his desired relief. The Complaint only seeks monetary relief in the amount of "$14,000 for 14 days of pain and bleeding." ECF No. 1, Compl. at 20. In a later filing, he clarified that the monetary damages pertained only to the "painful and bloody sore the leg brace rubbed on his leg when he was denied the use of his protective sleeve [Claim 2] . . . . [T]he remainder of this action seeks only prospective relief." ECF No. 29, Pl.'s Resp. Opp'n Mot. Dismiss at 7-8. He specifically named the provision of a wheelchair when describing his claims for injunctive relief. Id. at 8 ("Allow plaintiff full and unencumbered use of wheelchair as ordered by the VDOC doctor . . ."). Therefore, Bane has only sought injunctive relief in Claim 8 since he filed his Complaint.

Bane also argues that the ADA regulations required the medical staff to act on his requests, but this fact, even if true, does not alter the Court's original analysis. As the Court stated previously, "the nurses' actions were not pursuant to a policy such that they are reasonably likely to reoccur. Bane's allegation that the nurses will deliberately delay in granting his accommodation requests in the future is thus speculative and fails to meet the O'Shea test to confer standing." ECF No. 42, Mem. Opinion at 9. Bane's motion is thus denied as to Claim 8.

Second, Bane argues that Claim 2 as to the Eighth Amendment should not have been dismissed because he alleged that the pain from the leg sore was "'intense,' 'extreme,' and/or 'severe.'" ECF No. 47, Mot. Reconsider at 4. Bane does not identify where he made these allegations, but they do not appear in the Complaint. See ECF No. 1, Compl. at 7 (describing only "large sore around my right leg which became infected"). Even if they did appear in the Complaint, they must still meet the plausibility standard employed in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Bane's characterization of the pain caused by the sore as intense, extreme, and severe is inconsistent with the other record evidence that this injury was a skin abrasion that healed within fourteen days with nothing but band aids and gauze. Therefore, the court remains convinced that Bane's allegations about the leg sore do not state a plausible claim that this injury was sufficiently serious for purposes of the Cruel and Unusual Punishment Clause. "[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). The motion is denied on this ground.

Third, Bane contests the Court's ruling that he failed to show deliberate indifference by the Medical Defendants. The Court dismissed only Claims 2 (as to the confiscation of the Canadian crutch) and 6 (which concerns forced kneeling) on the ground that Bane's allegations did not support a finding of deliberate indifference by the Medical Defendants. The injury Bane alleged because of the confiscation of the crutch was nerve damage to his legs from not engaging in therapeutic walking. Bane has not alleged in the Complaint nor has he submitted any documentation indicating that he notified the medical staff of the need for his Canadian crutch to avoid nerve damage. See ECF No. 1, Compl. at 6-7 (mentioning the possibility of nerve damage only sparingly); ECF Nos. 27-2 at 8-15, 27-3 at 1-12, 41-1 at 1-34 (grievances and informal complaints submitted by Security Defendants and Bane fail to mention the confiscation of the crutch or the need to perform therapeutic walking). But see ECF No. 41-1 at 18 (mentioning the inability to perform therapeutic walking in a regular grievance due to the confiscation of the crutch, but eleven days *after* Bane was released from Ad Seg).

Even if Bane did inform the Medical Defendants of his need to walk, Bane has not produced "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate[d] a substantial risk of such serious harm resulting from [his] unwilling exposure to the challenged conditions," Shakka, 71 F.3d at 166 (internal citations omitted), as required under the objective prong of an Eighth Amendment claim. There is no allegation of injury in the Complaint. ECF No. 1, Compl. at 7. The only injury Bane alleged at the time as a result of his confiscated crutch was "increased pain in my legs as well as constant fear of falling." ECF No. 41-1 at 18. Even this allegation fails to meet the standard required by Shakka. Accordingly, the Court denies the motion as to Claim 2 under the Eighth Amendment.

As to the Medical Defendants' deliberate indifference under Claim 6, Bane has sought injunctive relief against these Medical Defendants. As discussed in the Memorandum Opinion, "Dr. Cacioppo and Nurse Mitchell no longer work for VDOC and therefore no injunctive relief—which is what Bane is seeking against all Defendants on this claim—can be had against these two Defendants." ECF No. 42, Mem. Opinion at 17. Nurse Yates is the only remaining Medical Defendant against whom Bane can seek injunctive relief. The only argument he makes as to Claim 6 (forced kneeling), however, is that Nurse Yates supervised Nurse Mitchell when Nurse Mitchell "arranged for Cacioppo to 'examine' plaintiff, and apparently managed to get Cacioppo to limit his 'examination' to only plaintiff's knees." ECF No. 47-1, Mot. Reconsider at 8. Bane thus claims that Nurse Yates is a proper defendant under a theory of supervisory liability.

The Fourth Circuit has outlined three ways in which deliberate indifference can be shown under a theory of supervisory liability: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted). Bane has not alleged any aspect of Nurse Yates's conduct that evidenced deliberate indifference under any of the three theories. Nurse Yates either provided medical care herself or caused it to be provided by Nurse Mitchell or Dr. Cacioppo. There is no suggestion or allegation that she interfered with any medical professional's performance.

Under the last theory in Miltier, Bane alleges that both Dr. Cacioppo and Nurse Mitchell violated the Eighth Amendment: Dr. Cacioppo, by performing a cursory medical examination,

and Nurse Mitchell, "by manag[ing] to get Cacioppo to limit his 'examination' to only plaintiff's knees." ECF No. 47-1, Mot. Reconsider at 8. As to Dr. Cacioppo's violations, Bane does not allege that Yates herself tacitly authorized or was indifferent to Dr. Cacioppo's alleged constitutional violations. Instead, Bane seems to suggest that injunctive relief is available against Nurse Yates because she supervised Nurse Mitchell, who arranged for Dr. Cacioppo to evaluate Bane, and Dr. Cacioppo committed an Eighth Amendment violation. Yates did not violate the Eighth Amendment under a supervisory liability theory for Dr. Cacioppo's constitutional violation because she did not supervise him. As to Nurse Mitchell's alleged violations, the unsupported allegation that Mitchell induced Dr. Cacioppo to limit the scope of his examination is exactly the sort of "naked assertion devoid of further factual enhancement" that both Twombly and Iqbal plainly state is insufficient. Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (internal punctuation omitted). For these reasons, the Court denies the motion as to Claim 6 under the Eighth Amendment.

Fourth, Bane argues that Claims 3 and 4 under the Eighth Amendment should be reinstated because the denial of the wheelchair was just as responsible for the leg sore as the confiscation of the leg sleeves and that the leg sore provides the allegation of injury that the Court found lacking in connection with the denial of the wheelchair. He also asserts that he seeks monetary damages for the denial of the wheelchair. Even accepting for the sake of argument that the denial of the wheelchair was responsible for the leg sore, considering the Court's conclusion that the leg sore was insufficiently serious, Claims 3 and 4 cannot be revived, and the Court denies the motion as to these claims.

Fifth, despite the clear language in the Complaint and subsequent filings, Bane now belatedly attempts to expand the scope of claims for which he demands monetary damages to

Case 7:12-cv-00159-JCT-RSB Document 48 Filed 02/15/13 Page 6 of 12 Pageid#: 732

include compensation for the pain he suffered while being carried by prison staff (Claim 7). The Complaint limited damages to "$14,000 for 14 days of pain and bleeding." ECF No. 1, Compl. at 20. In a later filing, Bane clarified that the monetary damages sought pertained only to the "painful and bloody sore the leg brace rubbed on his leg when he was denied the use of his protective sleeve. . . . [T]he remainder of this action seeks only prospective relief." ECF No. 29, Pl.'s Resp. Opp'n Mot. Dismiss at 7-8. Bane now seeks to backtrack from these statements, claiming that the proper scope of damages is for "pain and bleeding." ECF No. 47-1, Mot. Reconsider at 10. Based on this new interpretation of the complaint, Bane claims that he has always sought damages for the pain suffered while prison staff carried him. This assertion is flatly inconsistent with the Complaint and Bane's position throughout the litigation. Therefore, Bane's motion fails to demonstrate any error in the Order he challenges. If Bane wishes to move for leave to amend his demands for relief, he may do so by separate and appropriate motion. Defendants would then have an opportunity to object to amending the Complaint, if they desired.

Sixth, on a related note, Bane cites 28 C.F.R. § 35, App. B, for the proposition that the ADA expressly prohibits carrying of disabled persons and argues that Claim 7—which alleges an ADA violation based on staff carrying him while in Ad Seg—should be reinstated on this basis.[1] See id. ("The Department wishes to clarify that, consistent with longstanding interpretation of section 504 [of the Rehabilitation Act of 1973], carrying an individual with a disability is considered an ineffective and therefore an unacceptable method for achieving program accessibility.") This portion of the appendix applies to 28 C.F.R. § 35.150, which promulgates

[1] Bane did not specify that Claim 7 is the subject of this argument. The Court concluded that Bane stated a claim on his similar Claim 11, which sought relief from carrying while being transported to and from the prison. As the Court has already determined above that Bane has not stated in Claim 7 an Eighth Amendment claim based on carrying, and these are the only three claims that concern carrying, the Court infers that Bane must be referring to Claim 7 under the ADA.

standards related to "Existing Facilities." Assuming this regulation is applicable to Bane's carrying claim, he still must state a claim on the elements of an ADA claim. Nothing in the cited appendix affects the Court's finding that Bane's allegations do not show any respect in which, because of the carrying in Ad Seg, "[]he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his] disability." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005)." Still satisfied that Bane's complaint does not allege one of the essential elements of an ADA claim, the Court denies the motion as to Claim 7.

Seventh, Bane argues in regards to Claim 2 under the ADA that the Court, in dismissing this claim, runs the risk of giving VDOC carte blanche "to reject all ADA claims regarding assistive devices for physically disabled inmates in the VDOC." ECF No. 47-1, Mot. Reconsider at 13. In fact, the Court in fact dismissed Claim 2 for the same reason it dismissed Claim 7—Bane did not allege he was excluded from any program, service, or activity. Because Bane was not excluded from any program or activity because of the denial of his leg sleeves, the Court denies the motion as to Bane's attempt to reinstate Claim 2 under the ADA.

Eighth, Bane argues that the Court erred in dismissing Claims 3 and 4 under the ADA. These claims concern Bane's request for a wheelchair while he was in Ad Seg. The Court dismissed these claims because Bane argued that the lack of a wheelchair exacerbated his leg sore, which the Court treated as a medical treatment claim, for which no ADA liability lies.[2] See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996); see also Egan v. Va. Dept. of Corr., No. 7:06CV00338, 2006 WL 2222674, at *2 (W.D. Va. Aug. 2, 2006). In the present motion,

[2] The Court only dismissed Claim 3 to the extent Bane alleged the denial of the wheelchair exacerbated the leg sore. To the extent Bane alleged he was denied access to showers or outside recreation due to the lack of a wheelchair, the Court found that he stated an ADA claim. Claim 4 was dismissed in its entirety.

contrary to his prior submissions, Bane argues that he "DID in fact discuss the need for the wheelchair to access showers and outside exercise." ECF No. 47-1, Mot. Reconsider at 15.

Bane did not allege in the Complaint that he was excluded from any program, service, or activity because of the lack of a wheelchair and has stated throughout the litigation that the sole purpose for which he requested the wheelchair was to allow the leg sore to heal. See ECF No. 29, Pl. Reply to Answer at 56 ("Furthermore, plaintiff made clearly understood requests, verbal and written, that the only reason he needed the wheelchair is so he could go without the leg braces until his leg could heal."); Id. at 57 ("[T]he entire purpose of the request for the wheelchair was to allow plaintiff's leg to heal by going without the use of the leg braces."). The Court reiterates its prior statement that if Bane informed officials that he needed the wheelchair to access programs, services, or activities, he might state an ADA claim. Because the need for the wheelchair stated in the complaint was unconnected to any program, service, or activity, he did not state an ADA claim here. Therefore, the Court denies the motion on this ground.

Ninth, Bane argues that the Court erred in dismissing Claim 10, which concerns the documentation of his ailments on what VDOC calls the "Major Problems Sheet." Bane argues that VDOC's refusal to document the full extent of his disabilities on the sheet violates the ADA. The Court dismissed Claim 10 because the maintenance of Bane's medical records is a medical matter and because Bane did not allege he was denied participation in any program, service, or activity as a result of the alleged deficiencies of the Major Problems Sheet. ECF 42, Mem. Opinion at 27. In the present motion, Bane argues that "program or service" he was denied was "appropriate classification and the otherwise promised provision of ordered disability accommodations." ECF No. 47-1, Mot. Reconsider at 22.

While the Court can find no relevant case law, to grant Bane's interpretation would have troubling consequences. First, to grant Bane's desired injunctive relief as to this claim would involve the Court ordering VDOC to maintain Bane's medical records in a certain manner, a matter far outside the Court's expertise.

Second, the alleged improper maintenance of Bane's Major Problems Sheet is one step removed from the actual decisions that allegedly result in the denial of participation in programs, services, and activities. For example, before VDOC utilized a Major Problems Sheet, Bane alleges that the failure to document his ailments in one place led to his transfer to an inappropriate facility for his disability status. Id. The problem for Bane, however, is that while he can seek relief for the actions that directly violate the ADA, he cannot seek relief to direct the internal record-keeping methods VDOC employs to prevent such abuses. See, e.g., Bowen v. Roy, 476 U.S. 693, 699 (1986) (noting, in a Free Exercise case, a plaintiff's greatly decreased interest in "dictat[ing] the conduct of the Government's internal procedures."). In other words, Bane could seek relief under the ADA for the inappropriate facility transfer, but not the underlying administrative practices that led to that alleged ADA violation. Third, the alleged refusal to organize the Major Problems Sheet in the manner Bane prefers is not an action taken on the basis of Bane's disability; rather, it is because Bane has a voluminous and illegible medical record or because medical professionals disagree with Bane about the diagnosis and extent of his major medical problems. For these reasons, the Court denies the motion as to Bane's attempt to reinstate Claim 10.

Tenth, the final argument Bane makes is that the Court erred in dismissing his legal mail claim, Claim 13. Liberally construing the Complaint, the Court determined that Bane asserted both an access to courts claim and a right to counsel claim. The Court dismissed both claims

because Bane had not alleged any injury from the alleged violations of his legal mail rights. To show a cognizable injury, Bane "must show must show that non-delivery of his legal mail resulted in "'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a legal claim.'" Simkins v. Bruce, 406 F.3d 1239, 1243 (10th Cir. 2005) (quoting Lewis v. Casey, 518 U.S. 343, 351-53 & n. 3 (1996)).

In the present motion, Bane argues that the injury requirement is satisfied. To summarize a complicated factual situation,[3] Bane alleges that the opening of his legal mail delayed (and thereby hampered) the prosecution of a claim before the Court of Veteran Claims. Bane ignores the fact that his claim regarding Veterans benefits was deemed "moot after the Secretary of Veterans Affairs voluntarily provided the exact relief sought in the petition." ECF No. 47-1, Mot. Reconsider at 25. Because Bane achieved the exact result he sought in the litigation, he cannot show that the challenged mail delay caused any "actual injury" to his litigation efforts. See Williams v. Crawford, 449 F. App'x 288, 289 (4th Cir. 2011) (requiring that the prisoner "suffer actual detriment to a legal proceeding.") (citing White v. White, 886 F.2d 721, 723 (4th Cir. 1989)); Lewis v. Cook Cnty. Bd. of Com'rs, 6 F. App'x 428, 430 (7th Cir. 2001) (upholding dismissal of a legal mail claim because plaintiff could not "describe a single legal case or claim that was in any way thwarted because the mail room staff opened his legal mail.") (emphasis added). As such, the Court denies the motion as to Claim 13.

---

[3] As the Court understands it, VDOC officials first opened a letter dated 9/2/2011 from Attorney Kendall that contained a DVD, which they confiscated. Bane never viewed the DVD and officials destroyed it. Bane alleges that the information on the DVD would have helped prevent deficiencies in his petition before the Court of Veterans Claims. That court alerted Bane of the deficiencies in his petition in a 6/7/2012 letter, but this letter was not properly treated as legal mail and was opened and sent to two incorrect cells before reaching Bane, at which point several pages of the enclosed court documents were missing. The Court of Veterans Claims dismissed Bane's petition on 8/20/2012, but reinstated the action after Bane corrected the deficiencies in the petition. The petition was then mooted by the action of the Secretary of Veterans Affairs. ECF No. 47-1, Mot. Reconsider at 23-26.

## III. CONCLUSION

The Court finds no legal basis to reverse any of its conclusions from the earlier Memorandum Opinion and Order. ECF Nos. 42 & 43. Accordingly, the Court denies the Motion to Reconsider in its entirety.

ENTER: This 15th day of February, 2013.

James C. Turk

Hon. James C. Turk
Senior United States District Judge